NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., et al., Appellants,

v.

VALERO ENERGY CORPORATION, et al., Appellees.

No. 13–04–205–CV.

Court of Appeals of Texas, Corpus Christi–Edinburg.

Aug. 25, 2004.

Francisco R. Villarreal, Jose E. Garcia, Garcia & Villarreal, L.L.P., McAllen, Michael Choyke, Thomas C. Wright, Wright, Brown & Close, LLP, Houston, James G. Christiansen, Richard S. Kuhl, Jackson & Campbell, Washington, DC, for appellants.

Jason R. Cliffe, Ricardo G. Cedillo, Davis, Cedillo & Mendoza, Inc., Les Streiber III, Sharon E. Callaway, Michael J. Murray, Crofts & Callaway, San Antonio, David Taubenfeld, Haynes and Boone, LLP, Dallas, for appellees.

Before Justices YAÑEZ, RODRIGUEZ, and GARZA.

## OPINION

Opinion by Justice GARZA.

Appellants have filed an interlocutory appeal under civil practice and remedies code section 15.003(c), arguing that the trial court erred by allowing the joinder and intervention of appellees in a lawsuit brought against appellants by Valero Energy Company in Hidalgo County. Specifically, appellants claim that appellees did not establish two of the four statutory elements required for joinder and intervention: (1) an "essential need" to try their claims in Hidalgo County and (2) that Hidalgo County is a "fair and convenient" venue. We conclude that appellees have established these statutory elements and affirm the trial court's order allowing joinder and intervention.

## I. Background

The litigation giving rise to this interlocutory appeal involves a suit for declaratory judgment to establish the scope of a settlement agreement entered into by a group of insurers and certain corporate policy holders. From 1987 to 1997, National Union Fire Insurance Company of Pittsburgh, PA issued general liability policies to Ultramar, Inc. and its subsidiaries. During roughly the same period of time,

from 1987 to 1996, National Union also issued general liability policies to Diamond Shamrock, Inc. and its subsidiaries. Then, in 1996, Ultramar merged with Diamond Shamrock, forming Ultramar Diamond Shamrock Corporation ("UDSC"). Subsequently, from 1996 to 2001, National Union issued umbrella policies to UDSC that covered all Ultramar and Diamond Shamrock entities. On December 31, 2001, UDSC merged with Valero Energy Company. As a result of the merger, several subsidiaries of UDSC became subsidiaries of Valero. These included Ultramar, Diamond Shamrock Refining and Marketing Company, Ultramar Energy, Inc., and Ultramar Limited.

Numerous lawsuits have been brought against various UDSC-related entities since the polices were issued by National Union. For purposes of this appeal, the most significant of these lawsuits is pending against Diamond Shamrock in Hidalgo County.[1] In response to this suit, Valero, as Diamond Shamrock's successor in interest, requested a defense and indemnity under the policies issued to Diamond Shamrock by National Union. As discussed below, National Union ultimately denied coverage of this claim.

In addition to the suit against Diamond Shamrock, UDSC was named as a defendant in several lawsuits involving, among other things, products liability claims arising from UDSC's use of a gasoline additive known as MTBE. Ultramar, Beacon Oil, and Valero (as a successor in interest to UDSC) were also named as defendants in these suits. Again, the policyholders requested a defense and indemnity from National Union.

On June 12, 2003, National Union informed Valero and the UDSC entities that it was not responsible for claims relating to the above-referenced suits. In its letter refusing to provide coverage, National Union explained that a settlement agreement entered into by certain UDSC entities (including Ultramar) in April 2000 provided for a policy "buyback" or complete release of all claims on insurance policies issued to the Ultramar entities (with certain exceptions not relevant to this case) by the Insurance Company of the State of Pennsylvania ("ICSOP"), American Home Assurance Company, and AIG Technical Services, Inc. ("AIGTS"). The letter explained that, as a carrier related to AIGTS, National Union was released under the settlement agreement from covering policies it had issued to the UDSC entities. Valero and the UDSC entities disagreed with this interpretation of the settlement agreement. They maintained that the settlement agreement did not release National Union from the policy claims.

On June 24, 2003, Valero and Ultramar filed suit in Hidalgo County against National Union, ICSOP, American Home, and AIGTS for a declaratory judgment that the settlement agreement did not encompass the insurance polices issued to the UDSC entities by National Union. Three additional plaintiffs were subsequently allowed to intervene in the suit: Diamond Shamrock Refining and Marketing Company, Ultramar Energy, and Ultramar Limited. Each of the intervening plaintiffs is a UDSC entity and a subsidiary of Valero. Each has been named as a defendant in the lawsuits mentioned above involving the use of MTBE as a gasoline additive. As with the policy claims made by Valero and Ultramar, National Union has relied on the settlement agreement to deny policy claims made by each of the intervenors. Like Valero and Ultramar, the intervenors

1. That lawsuit is styled *Eva Reyna Ayala, et. al. v. Phillips Properties, Inc., et. al.,* No. C– 4597–92–E and is pending in the 93rd Judicial District Court of Hidalgo County.

seek a declaratory judgment that the settlement agreement does not release National Union from responsibility for its policies.

The defendants subsequently filed a motion to transfer venue as to Valero on grounds of improper venue and convenience. In addition, the defendants argued that the claims brought by the four other plaintiffs, Ultramar, Diamond Shamrock Refining and Marketing Company, Ultramar Energy, and Ultramar Limited, could not be heard in Hidalgo County because these plaintiffs had failed to meet the statutory elements required for joinder and intervention. The defendants asked the trial court to deny joinder and intervention, to sever the claims brought by these four plaintiffs, and to transfer those cases to Bexar County.

The trial court denied the defendants' motion in its entirety, and this interlocutory appeal by defendants ("appellants") ensued under section 15.003(c) of the civil practice and remedies code. TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(c).[2]

## II. Standard of Review

 A court of appeals must conduct a de novo review of the entire record to determine whether a trial court's section 15.003(a) joinder and intervention determinations were proper. *See id.* § 15.003(a); *Surgitek v. Abel,* 997 S.W.2d 598, 603 (Tex. 1999). In conducting this review, the court is not constrained solely to review the pleadings and affidavits but should consider the entire record, including any evidence presented at the hearing. *Surgitek,* 997 S.W.2d at 603.

 The plaintiffs bear the burden to establish prima facie proof of each joinder and intervention element. *See id.* at 602–03; *Teco–Westinghouse Motor Co. v. Gonzalez,* 54 S.W.3d 910, 913 (Tex.App.-Corpus Christi 2001, no pet.). All properly pleaded venue facts are taken as true unless specifically denied by an opposing party. *Blalock Prescription Ctr., Inc. v. Lopez–Guerra,* 986 S.W.2d 658, 662 (Tex.App.-Corpus Christi 1998, no pet.). If the defendants offer no rebuttal evidence, the inquiry is over, but if a defendant's joinder evidence rebuts the plaintiff's prima facie proof, a trial court has discretion to consider all available evidence to resolve any disputes that the parties' proof creates. *Surgitek,* 997 S.W.2d at 602–03.

## III. Discussion

Appellants claim that Ultramar, Diamond Shamrock Refining and Marketing Company, Ultramar Energy, and Ultramar Limited ("appellees") did not meet their burden of establishing all four elements for proper joinder or intervention under section 15.003(a). *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a).[3] Specifically, appellants argue that appellees failed to establish (1) an "essential need" for their claims to be tried in Hidalgo

---

2. The legislature amended section 15.003 in 2003, effective September 1, 2003. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.003 (Vernon Supp.2004) (current version). Because this suit was filed on June 24, 2003, the current version of the statute is not applicable to this case. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 204, § 3.03, 2003 Tex. Gen. Laws 847, 898–99 (amendments apply only to an action filed on or after September 1, 2003). All references to section 15.003 are to the version in effect prior to the 2003 amendments. *See* Act of May 4, 1995, 74th Leg.,

R.S., ch. 138, § 1, 1995 Tex. Gen. Laws 847, 853.

3. Section 15.003(a) reads

In a suit where more than one plaintiff is joined each plaintiff must, independently of any other plaintiff, establish proper venue. Any person who is unable to establish proper venue may not join or maintain venue for the suit as a plaintiff unless, independently of any other plaintiff, establish that:

County and (2) that Hidalgo County is a "fair and convenient" venue. *See id.* § 15.003(a)(3), (a)(4). Because appellees have not argued to this Court or to the trial court that they can establish proper venue in Hidalgo County independent of Valero, they must satisfy the requirements of subdivisions (1) through (4) of section 15.003(a). *See id.* § 15.003(b)(1). Appellants, however, have only challenged joinder and intervention based on subdivisions (3) and (4). Therefore, our review of the trial court's joinder and intervention determinations is limited to the requirements of those subdivisions. *See Teco–Westinghouse Motor Co.,* 54 S.W.3d at 914 (addressing only three of four elements for joinder because appellant did not challenge first element).

## 1. There Is an Essential Need for Appellees' Claims to be Tried in Hidalgo County

■ To prove an "essential need," appellees were required to show a compelling

> (1) joinder or intervention in the suit is proper under the Texas Rules of Civil Procedure;
> (2) maintaining venue in the county of suit does not unfairly prejudice another party to the suit;
> (3) there is an essential need to have the person's claim tried in which the suit is pending; and
> (4) the county in which the suit is pending is a fair and convenient venue for the person against whom the suit is brought.
> TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a).

4. According to appellees, the facts of each claim are essentially the same, revolving around the intent of the parties in entering into the settlement agreement; the relief sought by each claim is the same; each claim will involve the same issues of contract construction and alleged improper handling of insurance claims; and the witnesses will be the same for each claim.

5. Appellees argue that the Uniform Declaratory Judgment Act evidences an "essential need" for their claims to be tried in Hidalgo

reason why their claims must be tried in Hidalgo County and not merely that they have an "essential need" to join with other plaintiffs in order to pool resources. *See Am. Home Prods. Corp. v. Bernal,* 5 S.W.3d 344, 348 (Tex.App.-Corpus Christi 1999, no pet.).

Appellees argue that they have an "essential need" to try their claims in Hidalgo County because (1) their claims are virtually identical to the claim asserted in the pending suit (i.e., Valero's suit for declaratory judgment);[4] (2) they are corporate entities related to each other and to Valero, not separate individuals with separate injuries; (3) the declaratory judgment act requires that they be made parties to Valero's suit;[5] (4) if they cannot join and intervene in Valero's suit, they will be nonetheless bound by its outcome on the basis of collateral estoppel;[6] and (5) even if collateral estoppel would not bar re-litigation of the issue (i.e., whether the settlement agreement released National Union from

County because it provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration *must* be made parties." TEX. CIV. PRAC. & REM.CODE ANN. § 37.006(a) (Vernon 1997) (emphasis added). According to appellees, Valero's suit involves the same settlement agreement at issue in their cases and, thus, each appellee's interest will be affected by Valero's suit.

6. In *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984), the Texas Supreme Court articulated the following prerequisites to collateral estoppel: (1) the facts sought to be litigated in the first action were fully and fairly litigated in the prior actions; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action. Since *Bonniwell,* the supreme court has reformulated the third requirement, which now demands that the party against whom the plea of collateral estoppel is asserted be a party or in privity with a party in the prior litigation. *See Eagle Props., Ltd. v. Scharbauer,* 807 S.W.2d 714, 721 (Tex.1990).

liability on its policies), failure to allow joinder and intervention creates the potential for inconsistent judgments (i.e., judgments stating that the settlement agreement released National Union from the policies would conflict with judgments stating that National Union was not released from such policies).

Appellants contend that these arguments "completely miss the mark," as they do not prove anything more than that a lawsuit has been filed in Hidalgo County. This lawsuit, according to appellants, does not create an "essential need" for appellees to try their claims in Hidalgo County. Appellants suggest that appellees are simply trying to "tag-along" or "piggy-back" on Valero's suit because they have no independent connection to Hidalgo County. Appellants also contend that the "essential need" requirement cannot be established by the threat of collateral estoppel because Valero and appellees have the option of transferring their claims to Bexar County, where, according to appellants, venue is proper as to all parties.

■ We disagree with appellants' arguments and, for the reasons that follow, conclude that appellees have established an "essential need" to try their claims in Hidalgo County. In their brief, appellants state that "whichever party were to lose on the substantive claims ... would face a strong argument for collateral estoppel in any later litigation." We agree. Collateral estoppel likely will bar re-litigation of

the sole issue involved in Valero's suit against appellants.[7] According to appellants, however, this problem does not create an "essential need" because appellees may object to collateral estoppel when it is actually invoked in future litigation; there is no "essential need" to avoid the inconvenience of having to make arguments against collateral estoppel in the future.

Although we agree that a desire for convenience does not constitute an "essential need," see Smith v. Adair, 96 S.W.3d 700, 707 (Tex.App.-Texarkana 2003, pet. denied), we disagree that the problem created by collateral estoppel is merely an issue of convenience. Appellees face a "Catch–22": to litigate the scope of the settlement agreement, they must file separate suits, but if they file separate suits, collateral estoppel most likely will bar them from litigating the scope of the settlement agreement. Appellees' "essential need" is precisely to avoid this dilemma. If joinder and intervention are not allowed, appellees may never get their day in court. Thus, their "essential need" is their need to avoid the bar of collateral estoppel and to retain an opportunity to litigate the settlement agreement.

■ Appellants maintain that such arguments are without merit because Valero could transfer its case to Bexar County, where appellees could also establish proper venue. This, however, would force Valero to relinquish its choice of venue, which

---

**7.** The only open question on the issue of whether collateral estoppel would apply to future litigation appears to be whether the privity requirement would be satisfied. See note 6, supra. As appellants' reply brief concedes, however, because appellees "are now owned by Valero and are represented by the same counsel, it certainly appears that their interests are being represented by Valero." Thus, it seems that the prerequisites to collateral estoppel, including the privity requirement, would be satisfied. See Amstadt v. U.S.

Brass Corp., 919 S.W.2d 644, 653 (Tex.1996) (explaining that two of the three ways to establish privity include proof that (1) a party can control an action even if it is not a party to the action and (2) the party's interests are represented by a party to the action); see also Espeche v. Ritzell, 123 S.W.3d 657, 667 (Tex. App.-Houston [14th] Dist.2003, pet. denied) ("Privity exists if the parties share an identity of interests in the basic legal right that is the subject of the litigation.").

the trial court has already upheld under direct attack. Thus, yet again, appellees have an option that is really no option at all: they can join and intervene in Valero's suit, but only if Valero transfers its suit to appellants' choice of venue, which Valero has already demonstrated it will not do.

Aside from presenting a largely illusory option for appellees, appellants' argument is fundamentally flawed: if sustained, it would eliminate altogether the possibility of ever showing an "essential need." A party opposing joinder or intervention could always argue that there is no "essential need" because venue is proper in another county. By hypothesis, a party seeking joinder or intervention under section 15.003 cannot independently establish proper venue in the county of suit. Thus, there will always be, as appellants argue, a different county in which venue is proper. This, however, does not address the "essential need" to try claims in a county in which venue is not otherwise proper. If the legislature meant to forbid joinder and intervention in cases such as this, it could have repealed section 15.003. It has not done so. We will therefore not interpret section 15.003 in a manner that renders it meaningless.

Further, even assuming, *arguendo,* that collateral estoppel will not prevent separate suits by appellees, we would nevertheless conclude that they have established an "essential need" because, without collateral estoppel, an undeniable possibility of inconsistent judgments exists. For instance, if Valero were to lose its suit and appellees were to win their suits, there would be *no* single interpretation of the settlement agreement. In *Tex. Mut. Ins. Co. v. E. Side Surgery Ctr., Inc.,* —— S.W.3d ——, Nos. 13–02–278–CV and 13–02–354–CV, 2004 WL 1576588, 2004 Tex.App. LEXIS 6299 (Corpus Christi, July 15, 2004, no pet. h.), this Court addressed the issue of whether an "essential need" had been established in a context very similar to this appeal. Specifically, this Court held

> The entanglements between these three cases including the potential for inconsistent rulings on certification, inconsistent judgments, and inconsistent resulting obligations establishes an essential need to allow Appellees to join suit in Cameron County.

*Id.* at ——, 2004 WL at *3, at *13.

For reasons similar to those articulated in *Tex. Mut. Ins. Co.,* we hold that appellees have demonstrated an essential need to try their claims in Hidalgo County. If the suit in Hidalgo County is allowed to go forward without appellees as plaintiffs, appellees could be collaterally estopped from litigating the scope of the settlement agreement in their own suits. They would thus be bound by a Hidalgo County judgment, even though they were not allowed to participate in the case. Even if collateral estoppel would not bar their individual suits, multiple lawsuits would create a possibility of inconsistent judgments and therefore inconsistent resulting obligations regarding a single contract.

For these reasons, we conclude that appellees have demonstrated an "essential need" to try their claims in Hidalgo County. We overrule appellants' first issue.

### 2. Hidalgo County Is a Fair and Convenient Venue for All Parties.

In their second issue, appellants argue that joinder and intervention were improper because appellees failed to prove that Hidalgo County is a "fair and convenient" venue for all parties. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 15.003(a)(4). Appellants, however, have not challenged the "no unfair prejudice" element of section 15.003. *See id.* § 15.003(a)(2). This Court has held that evidence of "no unfair preju-

dice" also establishes the "fair and convenient" element. *See Teco–Westinghouse Motor Co.*, 54 S.W.3d at 918; *Blalock*, 986 S.W.2d at 665; *Surgitek, Inc. v. Adams*, 955 S.W.2d 884, 891 (Tex.App.-Corpus Christi 1997, pet. dism'd). Appellees argued to the trial court that there would be "no unfair prejudice" to appellants because, regardless of whether joinder and intervention were allowed, appellants will have to defend themselves in Hidalgo County on the same contract and coverage issue and with the same witnesses. Because proof of "no unfair prejudice" can establish that a venue is "fair and convenient" and because appellants have not challenged appellees' proof of "no unfair prejudice," we hold that appellees have established Hidalgo County as a "fair and convenient" venue. We overrule appellants' second issue.

### Conclusion

The order of the trial court is AFFIRMED.