SUSTAINABLE TEXAS OYSTER RESOURCE MANAGEMENT L.L.C., Appellant

v.

HANNAH REEF, INC., Shrimps R US, Inc., Ivo Slabic, and Michael Ivic, Appellees

In re Sustainable Texas Oyster Resource Management L.L.C., Relator

NO. 01–15–01026–CV, NO. 01–16–00030–CV

Court of Appeals of Texas, Houston (1st Dist.).

Opinion issued March 31, 2016

Rehearing En Banc Overruled June 28, 2016

. Richard G. Baker, Baker & Zbranek, P.C, Liberty, TX, James B. Galbraith, Anthony P. Brown, Jocelyn A. Holland, McLeod, Alexander, Powel & Apffel, Galveston, TX, for appellant/relator.

George W. Vie III, Mills Shirley L.L.P., Galveston, TX, for appellee/real party in interest.

## OPINION

Laura Carter Higley, Justice

Oystermen (1) Hannah Reef, Inc., (2) Shrimps R Us, (3) Ivo Slabic, and (4) Michael Ivic seek to enforce property rights conferred to them under leases entitling them to cultivate and harvest oysters in certain parts of Galveston Bay and to enforce their rights to fish for oysters in public waters pursuant to licenses issued by the Texas Parks and Wildlife Department, an agency of the State of Texas. In 2014, the Chambers–Liberty Counties Navigation District ("the Navigation District"), to which the State had conveyed submerged land within Galveston and Chambers Counties in Galveston Bay, entered into a "Coastal Surface Lease" for "the Planting, Transplanting and Harvesting of Oysters (and other related purposes)" with appellee Sustainable Texas Oyster Resource Management L.L.C. ("STORM").

The Oystermen sued STORM in Galveston County District Court, alleging that STORM has interfered with their respective property rights under their oyster leases. The Oystermen also sought a declaration that STORM cannot prohibit them from harvesting oysters in the public fishing areas.

STORM moved to transfer the venue of Shrimps R Us's and Slabic's claims to Chambers County, in which their two oyster leases lie. The trial court denied the motion, and STORM filed this interlocutory appeal and petition for writ of mandamus to challenge the order denying its motion to transfer venue.

We affirm the trial court's order in the interlocutory appeal. Because STORM has an adequate remedy by appeal, we deny the petition for writ of mandamus.

## Background

In 1957 and 1967, the State of Texas conveyed land submerged by the waters of Galveston Bay to the Navigation District. The submerged land, located in Chambers and Galveston Counties, was conveyed by a series of land patents. The patents expressly reserved mineral rights to the State. The patents also reserved, "for the benefit of the general public [,] the right to use that portion of the above described land which shall actually be covered by water for hunting, fishing, or other recreational purposes . . ."

Between 1975 and 1989, the Texas Parks and Wildlife Department, an agency of the State, issued six certificates of location, leasing six tracts of submerged land in Galveston Bay to private parties. These six tracts of submerged land lie within the land transferred to the Navigation District by the State of Texas in 1957 and 1967. The six leases, known specifically as Lease Nos. 409A, 410A, 413A, 431A, 430A, and 433A, permit the leaseholders to plant and harvest oysters on the submerged land described in the leases.

Over the years, each of the six oyster leases was transferred to a different private party, as permitted by the Texas Parks and Wildlife Department. By 2014, the six leases were held by the Oystermen, as follows: Hannah Reef held Lease Nos. 413A and 433A; Shrimps R Us held Lease No. 431 A; Ivo Slabic held Lease No. 430A; and Michael Ivic held Lease Nos. 409A and 410A. The portion of the submerged land subject to the leaseholds owned by Hannah Reef and Ivic—Lease Nos. 409A, 410A, 413A, and 433A—are located in Galveston County. The portion of the submerged land subject to leaseholds owned by Slabic and Shrimps R

Us—Lease Nos. 430A and 431A—are in Chambers County. Thus, four of the oyster leases were located in Galveston County and two were located in Chambers County.

On April 14, 2014, the Navigation District entered into a "Coastal Surface Lease" with STORM. The Coastal Surface Lease grants STORM the exclusive right, for a period of 30 years, to cultivate and harvest oysters on approximately 23,-000 acres of submerged land in Galveston Bay. The lease states ·that ownership of the submerged land was conveyed to the Navigation District by the State of Texas by patents in 1957 and 1967. Included within these 23,000 acres is the submerged land subject to the six private oyster leases issued by the Texas Parks and Wildlife Department and currently held by the four Oystermen.

On August 5, 2014, STORM sent a letter to the Oystermen entitled "No Trespass Notice" and "No Unauthorized Oyster Activities Notice." The letter informed the Oystermen as follows:

This letter is written notice to you that [STORM] is the Lessee of the land described in the referenced Coastal Surface Lease from [the Navigation District]. [The Navigation District] obtained fee simple title to the land from the State of Texas by ... Letters Patent. The land is located along the shore of Trinity–Galveston–West–East Bay and is generally submerged land.

. . .

[The Navigation District] acquired fee simple title to the land in 1957 & 1967. Pursuant to the lease, STORM has the superior right to use and possession of the land under [the Navigation District's] fee simple ·title for oyster purposes. . . .

The right to plant, cultivate and grow oysters· on this land is inherent in [the Navigation District's] fee title to the land; a ·right now leased to STORM. It has come to STORM's attention that you might be engaged in or about to engage in oyster activities on the land that con-.flict with STORM's property rights and_ the lease. Be advised that under the lease, you may not engage in oyster activities ·upon the land without STORM's consent. Likewise, under the Texas Parks &.Wildlife Code, you may not catch. by any means or method or possess an oyster on this land without STORM's consent. . . .

·Any claim that the State of Texas has the right to authorize you to trespass upon the land· is without merit.

TAKE NOTICE that·you do not have STORM's consent to engage in oyster activities on the land. If you engage in oyster activities on the land, or interfere with STORM's rights to use and possession of the land, TAKE NOTICE that STORM will enforce its rights against trespassing and trespassers to the fullest extent or the law.

On July 24, 2015, the Oystermen filed suit against STORM in Galveston County District Court to enforce their respective property rights under the· six private oyster leases. · They asserted, "Galveston County Venue in this Court is proper under Tex. Civ. Prac. Rem. Code, § 15.011, as this action relates to the lease of lands located in Galveston Bay, Galveston County, Texas and to remove encumbrances on and quiet title to said property." The Oystermen asserted claims to quiet title, for trespass to try title, and for tortious interference with prospective business relations. They sought declaratory and injunctive relief as well as damages. .

On September 4, 2015, STORM answered, generally denying the Oystermen's claims and specifically denying the

venue allegations. STORM also filed a motion to transfer the suit to Chambers County. STORM asserted venue was mandatory in Chambers County for Shrimps R Us's and Slabic's claims because the leases held by those parties involve land located in Chambers County. STORM ultimately agreed that venue was proper in Galveston County for Hannah Reef's and Ivic's claims because the oyster leases on which they base their claims involve land located in Galveston County.

On October 19, 2015, the Oystermen responded to the motion to transfer venue. They argued that venue is proper in Galveston County for Shrimps R Us's and Slabic's claims because Shrimps R Us and Slabic have established the four elements necessary for joinder found in Civil Practice and Remedies Code section 15.003(a). *See* Tex. Civ. Prac. & Rem. Code § 15.003(a) (Vernon Supp.2015).

As part of these factors, Shrimps R Us and Slabic asserted that they have an essential need for their claims to be decided in Galveston County District Court, where the suit is pending. *See id.* at 15.003(a)(3). Shrimps R Us, Inc. and Slabic claimed that they "conduct their business in Galveston County." They stated that "[r]ecords related to their claim are located in Galveston County as all of the leases at issue in this matter are recorded in Galveston County." They pointed out that "[a]ll four Plaintiffs have jointly engaged counsel located in Galveston County" and claimed that "transferring this case to a different county would be cost prohibitive." They further claimed, "Forcing some Plaintiffs to pursue claims outside of Galveston County would result in unnecessary duplication, increased costs of suit, and undue hardship on plaintiffs and their witnesses."

Among the evidence offered to support the response was Slabic's affidavit. In his affidavit, Slabic testified as follows:

2. My business is located in Galveston County, Texas.

3. I hold a lease issued by the [the Texas Parks and Wildlife Department] for the harvesting and planting of oysters at location 430A in Galveston Bay, Chambers County, Texas. I have held the property at location 430A in the same manner since 2003.

4. The lease for location 430A is recorded with the county clerk's office in Galveston County, Texas.

5. This lease gives me an interest in the submerged lands described in the certificate for location for 430A.

6. I have first-hand knowledge of the oyster reefs I created and maintained on my leases over the past many years.

7. The revenue derived from the cultivation and harvesting of these oyster reefs provides my livelihood.

8. Prior to the actions of Mr. Woody and Mr. Nelson [STORM's principals] in or around 2014, I had never been informed by anyone that the Chambers Liberty County Navigation District had any authority over oyster leases in Galveston Bay.

9. If Mr. Woody and Mr. Nelson were to act in the manner to which they have publicly announced they are entitled pursuant to the agreement with Chambers Liberty County Navigation District, it would prevent me from maintaining my livelihood and damage oyster reefs, which have taken years to nurture and build.

10. Some of the other Plaintiffs in this case have oyster leases in Galveston County. It is essential for this matter to be litigated in Galveston County. Many of the documents related to my business are in Galveston County. I run

my oyster crews out of Galveston County. Chambers County is much further away and, given recent events in Chambers County, it is clear it would be more costly to be in Chambers County.

11. I have hired the law firms of Feldman & Feldman, P.C. and Mills Shirley, L.L.P., along with plaintiffs Hannah Reef, Inc., Shrimps R Us, Inc. and Michael Ivic, to represent my interest related to my lease in Galveston Bay. We made this decision for the benefits of convenience, economy and fairness.

13. Traveling to Galveston County for proceedings in this matter would not be an inconvenience or injustice. However, travel to Chambers County would be.

14. It would be unduly burdensome and an extreme hardship on myself and individuals involved in my lawsuit if my case were to be transferred from Galveston County, Texas.

On October 23, 2015, the Oystermen filed their fourth amended petition. The Oystermen continued to pursue claims to quiet title, for trespass to try title, and for tortious interference, asserting their respective property rights under the six oyster leases issued by Texas Parks and Wildlife Department. The Oystermen maintain that their leases are valid and that the 23,000–acre Coastal Surface Lease, issued by the Navigation District to STORM, covering the same areas as the Oystermen's private oyster leases and public fishing areas, is invalid. The Oystermen averred that the Texas Parks and Wildlife Department "has the sole authority to issue leases (along with certificates of location) authorizing persons to plant oysters and make a private oyster bed in the public waters of the State." They alleged that the Navigation District does not "have any legal authority to lease the submerged lands for purposes of cultivating or harvesting oysters."

The Oystermen sought a declaration that their oysters leases are valid and enforceable and that the Coastal Surface Lease is not valid and enforceable. The Oystermen also sought "title and possession of the property as set forth in their leases." The Oystermen further requested that STORM be enjoined "from seeking enforcement of [the Coastal Surface Lease] against [the Oystermen], in any manner, and interfering with [the Oystermen's] use and enjoyment of their property covered by their leases with the State." The Oystermen also sought a determination whether STORM, by way of the Coastal Surface Lease, could limit their right to harvest oysters from public fishing grounds in Galveston Bay that lie within the property subject to STORM's lease. The Oystermen averred that the Texas Parks and Wildlife Department "has the sole authority to issue commercial oyster fishermen's licenses to persons desiring to take oysters from public waters of the State [of Texas]...." The Oystermen indicate that they each have licenses, issued by the Texas Parks and Wildlife Department, to fish for oysters in the public fishing areas of Galveston Bay. The Oystermen also sought "declaratory relief that the [Coastal Surface Lease] in no way prohibits their ability to fish for oysters in public waters."

The Oystermen also request monetary damages based on their tortious interference with prospective business relations claim. They alleged that STORM had engaged "in harassing conduct." The Oystermen claimed that STORM had navigated "their boats so close to [the Oystermen's] boats that at least one was forced aground." The Oystermen also alleged that STORM had been "following and filming one or more of [the Oystermen's] crews for purposes of intimidation, to frustrate [the Oystermen's] attempts to

relocate oysters in danger of dying as a result of the Memorial Day floods in the Galveston Bay area." The Oystermen alleged that, as a result of STORM's conduct, they were not able to rescue and relocate various beds of oysters." They claimed that "those oysters died resulting in a loss of revenue." The Oystermen further claimed that STORM's conduct was "exacerbated by its public statements to the effect that [the Oystermen] were 'stealing' STORM's oysters."

In addition, the Oystermen requested a temporary injunction "to prevent [STORM] from acting pursuant to an invalid lease, including the exclusion of [the Oystermen] from the property at issue and/or interference with [the Oystermen's] quiet use and enjoyment of such property." The Oystermen further sought to restrain "STORM from interfering with their right to fish for oysters in public waters STORM now alleges it controls."

Following an evidentiary hearing, the trial court granted the Oystermen's request for a temporary injunction. The trial court's October 30, 2015 temporary-injunction order provides,

The Court finds and concludes that [the Oystermen] hold leases and certificates of location issued by the Texas Parks and Wildlife Department ... authorizing [the Oystermen] to plant and harvest oyster beds in Galveston Bay, as well as licenses to fish for oysters in the public waters of the State.

The Court finds and concludes that STORM, in reliance on [the Coastal Surface Lease], intends to restrict access by [the Oystermen] to the approximately 23,000 acres covered by the [Coastal Surface Lease], which includes areas covered by [the Oystermen'] leases and certificates of location, and public waters that [the Oystermen] are otherwise licensed to fish in.

The trial court ordered STORM to refrain from entering the Oystermen's leaseholds and to refrain "from hunting, catching, transplanting, or disturbing" the oysters within the Oystermen's leaseholds. STORM was also restrained "from prohibiting, preventing, or limiting [the Oystermen's] access to and use of the area covered by the [Coastal Surface Lease], pursuant to licenses issued by the [Texas Parks and Wildlife Department]." STORM was further restrained "from interfering with, harassing, or disrupting [the Oystermen's] oyster fishing activities or the oyster fishing activities of any duly licenses oyster fisherman."

The trial court conducted a hearing on STORM's motion to transfer venue on November 17, 2015. STORM reasserted its request that the claims of Shrimps R Us and Slabic be transferred from Galveston County to Chambers County. STORM argued that the claims should be transferred because Shrimps R Us's and Slabic's two oyster leases are located in Chambers County, unlike the other four oyster leases held by Ivic and Hannah Reef, which are located in Galveston County.

In defending against the motion to transfer, the Oystermen averred:

All the Plaintiffs [the Oystermen] are located here in Galveston County. Their businesses are in Galveston County. Their witnesses are in Galveston County. They ... go back and forth to the leases from Galveston County. Everything is specific to Galveston County. The only thing that's not specific is the [Coastal Surface Agreement] that was executed by Defendants in Chambers County, but that reaches ... into Galveston County.... And given the unified legal issue that we have, which is the validity of the lease, there is the essential need for the Plaintiffs to be all in one local in one forum.

The Oystermen also filed a post-hearing letter with the trial court. In the letter, the Oystermen averred:

> Plaintiffs' [the Oystermen's] claims concern not just their state issued leaseholds, but also their right to fish in public waters in Galveston County via state issued licenses. As the Court may recall from the Temporary Injunction hearing on October 30, 2015, [STORM] considers anyone fishing on its "lease" from [the Navigation District] a trespasser. At the hearing on October 30, 2015, evidence was presented as to Plaintiffs' use of state issued licenses to fish in public waters in Galveston County which Defendant STORM claims title to. The Court's Temporary Injunction order found that STORM intended to restrict access of Plaintiffs to all of its "leased" 23,000 acres, of which a sizable percentage is in Galveston County. In this regard, Galveston County is the proper venue for all Plaintiffs.

The trial court signed an order denying STORM's motion to transfer venue. STORM filed an interlocutory appeal and petition for writ of mandamus in this Court, challenging the order denying its motion to transfer. In both the interlocutory appeal and the mandamus proceeding, STORM presents two issues, contending that the trial court erred in denying its motion to transfer venue. STORM asserts that the motion should have been granted because Shrimps R Us and Slabic did not meet the requirements of Civil Practice and Remedies Code Section 15.003 to join in Hannah Reef's and Ivic's suit in Galveston County. Specifically, STORM asserts that, to remain joined in the suit under Section 15.003, Shrimps R Us and Slabic needed to either (1) independently establish venue in Galveston County or (2) establish an essential need to "bring their title suit" in Galveston County.

## Appellate Jurisdiction

As a preliminary matter, we determine whether we have appellate jurisdiction to review the trial court's interlocutory order denying STORM's motion to transfer venue. Generally, we do not have jurisdiction to review a trial court's venue determination. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.064(a) (Vernon 2002). In this case, the parties assert that we have jurisdiction pursuant to Civil Practice and Remedies Code Section 15.003. Section 15.003, entitled "Multiple Plaintiffs and Intervening Plaintiffs," provides in relevant part, as follows:

> (a) In a suit in which there is more than one plaintiff, whether the plaintiffs are included by joinder, by intervention, because the lawsuit was begun by more than one plaintiff, or otherwise, each plaintiff must, independently of every other plaintiff, establish proper venue. If a plaintiff cannot independently establish proper venue, that plaintiff's part of the suit, including all of that plaintiff's claims and causes of action, must be transferred to a county of proper venue or dismissed, as is appropriate, unless that plaintiff, independently of every other plaintiff, establishes that:
>
> > (1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;
> >
> > (2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;
> >
> > (3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and
> >
> > (4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

(b) An interlocutory appeal may be taken of a trial court's determination under Subsection (a) that:

(1) a plaintiff did or did not independently establish proper venue; or

(2) a plaintiff that did not independently establish proper venue did or did not establish the items prescribed by Subsections (a)(1)–(4).

*Id.* § 15.003(a)–(b) (Vernon Supp.2015) (emphasis added).

Pursuant to Section 15.003(b), the legislature has provided, in cases involving multiple plaintiffs, as here, a limited right to interlocutory appeal to challenge a trial court's determination that a plaintiff did or did not independently establish proper venue or did or did not establish the prerequisites of subsections (a)(l)–(4). *Id.* § 15.003(b). Accordingly, we conclude that we have jurisdiction over this interlocutory appeal pursuant to section 15.003(b). See *id.*; *Ramirez v. Collier, Shannon, Scott, PLLC,* 123 S.W.3d 43, 50 (Tex.App.–Houston [1st Dist.] 2003, pet. denied).

## Motion to Transfer Venue

### A. Burden of Proof

■ "Section 15.003(a) takes as its starting point a 'person who is unable to establish proper venue.'" *Surgitek v. Abel,* 997 S.W.2d 598, 603 (Tex.1999). Accordingly, a trial court must first determine whether a plaintiff can independently establish proper venue before it reaches the four joinder elements found in section 15.003(a)(1)–(4). *Id.;* see TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a).

■ A plaintiff independently establishes venue with prima facia proof that venue is proper. *See Surgitek,* 997 S.W.2d at 603. "Prima facie proof is made when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting each pleading." TEX. R. CIV. P. 87(3)(a); see also *Surgitek,* 997 S.W.2d at 603. A plaintiff's prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.,* 868 S.W.2d 752, 757 (Tex.1993). If the plaintiff proves venue facts that support venue, the trial court must maintain the lawsuit in the county were suit was filed unless the motion to transfer is based on an established ground of mandatory venue. TEX. R. CIV. P. 87(3)(c). If the plaintiff fails to meet this burden, the trial court must transfer the lawsuit to another specified county of proper venue. *Wilson v. Tex. Parks and Wildlife Dep't,* 886 S.W.2d 259, 260 (Tex.1994).

If he cannot independently establish venue to support joinder, a plaintiff may nonetheless avoid transfer by establishing the following four factors:

(1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;

(2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(1)–(4).

■ Given the subjective nature of these four factors, a plaintiff may offer a wider range of prima proof to establish these factors than is offered to independently establish venue. *See Surgitek,* 997 S.W.2d at 603 ("[W]e conclude that the trial court has discretion to allow a broad-

er range of proof in making a section 15.003(a) joinder determination than it would in a venue hearing. Specifically, a trial court may allow the parties to offer testimony, if the trial court believes it would be useful to its determination....."). A defendant must be afforded the opportunity to rebut the plaintiff's prima facie proof. *See id.* "To the extent that a defendant's joinder evidence rebuts the plaintiff's prima facie proof on any of the joinder elements, a trial court has discretion to consider all available evidence to resolve any disputes that the parties' proof creates." *See id.*

## B. Scope and Standard of Review

■■■■ Section 15.003 expressly precludes this Court from considering the trial court's denial of STORM's motion to transfer venue under either an abuse-of-discretion or substantial-evidence standard. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(c)(1). Instead, we "conduct a de novo review of the entire record to determine whether a trial court's section 15.003(a) joinder determination was proper." *Surgitek*, 997 S.W.2d at 603; *see also Tex. Windstorm Ins. Ass'n v. Boyle*, No. 01–13–00874–CV, 2014 WL 527574, at *2 (Tex.App.–Houston [1st Dist.] Feb. 6, 2014, no pet.) (mem.op.). We "make [our] own determination of the propriety of joinder under section 15.003(a), with no deference to the trial court's ruling." *Surgitek*, 997 S.W.2d at 603. We are "not constrained solely to review the pleadings and affidavits, but should consider the entire record, including any evidence presented at the hearing." *Id.*

## C. Propriety of Venue in Galveston County

■■■ Certain kinds of suits involving land must be filed in the county where all or a portion of the property is located. *In re Signorelli Co.*, 446 S.W.3d 470, 473 (Tex.App.–Houston [1st Dist.] 2014, orig. proceeding). In this regard, Civil Practice and Remedies Code Section 15.011 provides as follows:

> Actions for recovery of real property or an estate or interest in real property, for partition of real property, to remove encumbrances from the title to real property, for recovery of damages to real property, or to quiet title to real property shall be brought in the county in which all or, a part of the property is located.

TEX. CIV. PRAC. & REM. CODE ANN. § 15.011 (Vernon 2002). Two venue facts must be established to show that venue is mandatory under section 15.011:(1) that the nature of the suit fits within those listed in section 15.011; and (2) that all or part of the realty at issue is located in the county where venue is sought. *In re Signorelli Co.*, 446 S.W.3d at 473.

■■■ A claim falls within the mandatory venue provision of Section 15.011 when the essence of the dispute involves an interest in real property. *See In re Applied Chem. Magnesias Corp.*, 206 S.W.3d 114, 118–19 (Tex.2006) (orig. proceeding). Because it involves an interest in real property, a claim seeking to enforce and validate an interest in a leasehold, such as the oyster leases, would be the type of dispute that fits within those listed in Section 15.011. *See id.*

Here, it is undisputed that the four oyster leases held by Hannah Reef and Ivic involve property located in Galveston County. For this reason, the parties agree that, under Section 15.011, the mandatory venue for Hannah Reefs and Ivic's claims, seeking to enforce Hannah Reef's and Ivic's property rights under their oyster leases, are claims properly decided in Galveston County.

■ In addition, the record reflects that all four Oystermen's claims for declaratory relief, involving the public fishing areas, are also properly brought in Galveston County under Section 15.011. The Oystermen request the trial court to declare that the Navigation District had no authority to issue the Coastal Surface Lease, that the lease is invalid, and that the lease in no way prohibits the Oystermen from harvesting oysters in the public fishing areas. The essence of the dispute is the validity of the Coastal Surface Lease, which provides STORM with the exclusive right to harvest oysters in the area covered by the lease, including the public fishing areas. The question of whether the lease is valid involves an interest in real property and, therefore, falls within Section 15.011's mandatory venue provision. See id.; see also In re Evolution Petroleum Co., 359 S.W.3d 710, 714 (Tex.App.–San Antonio 2011, orig. proceeding) (holding that mandatory venue applied where the essence of the dispute was whether the primary term of a mineral lease had expired).

Furthermore, evidence admitted at the temporary-injunction hearing and referenced at the venue hearing, including maps and testimony delineating the location of the Coastal Surface Lease and the public fishing areas, shows that the public fishing areas, subject to the Coastal Surface Lease, are located within both Chambers and Galveston Counties. Thus, the Oystermen's claims for declaratory relief, seeking a declaration that Coastal Surface Lease is invalid and does not prohibit them from harvesting oysters in the public fishing areas, are properly brought under 15.011, in Galveston County. See Tex. Civ. Prac. & Rem. Code Ann. § 15.011 (providing that an action shall be brought in county where all or *part* of the property is located); see also Hanzel v. Herring, 80 S.W.3d 167, 170–71 (Tex.App.–Fort Worth 2002, no pet.) (upholding trial court's denial of motion to transfer venue in case where evidence showed leases spanned two counties and suit was filed in one of those counties). Thus, we conclude that Shrimps R Us and Slabic independently established venue in Galveston County with respect to their claims for declaratory relief regarding the validity of the Coastal Surface Lease and the Oysterman's rights to harvest oysters in the public fishing areas.

We now turn to whether Shrimps R Us's and Slabic's claims to enforce their private property rights under their oyster leases should be transferred to Chambers County. It is undisputed that Shrimps R Us's and Slabic's oyster leases are located in Chambers County. STORM asserts that, just as Section 15.011 requires Hannah Reef's and Ivic's claims—involving their private oyster leases—to be brought in Galveston County, Section 15.011 requires Shrimps R Us's and Slabic's claims, involving their private oyster leases, to be brought in Chambers County. Because Section 15.011 is a mandatory venue provision, STORM argues that Shrimps R Us and Slabic cannot otherwise independently establish venue in Galveston County for their claims related to their leaseholds in Chambers County.

STORM further asserts that, not only have Shrimps R Us and Slabic failed to independently establish venue in Galveston County, they also have not established an "essential need," as required under Section 15.003(a)(3), to have their claims tried in Galveston County.[1] See Tex. Civ. Prac. &

---

1. STORM does not dispute that Shrimps R Us and Slabic established the other three factors required in 15.003(a)(1)–(4).

REM. CODE ANN. § 15.003(a)(3). Shrimps R Us and Slabic respond that they have established an essential need to have their claims involving their oyster leases tried in Galveston County. We agree with Shrimps R Us and Slabic.

In *Surgitek*, the Supreme Court of Texas defined "essential" as "indispensably necessary." *Surgitek, Bristol–Myers Corp. v. Abel*, 997 S.W.2d 598, 604 (Tex. 1999). There, 104 plaintiffs, who could not independently establish proper venue, sought to join with two plaintiffs, who had independently established proper venue in Bexar County. *Id.* at 600. All the plaintiffs alleged injuries from defective breast implants. *Id.* To show essential need, the *Surgitek* plaintiffs asserted that there were common facts and issues, that the defendant, Surgitek, had designated the same expert witnesses, that the witnesses were located throughout the country, and that the plaintiffs needed to pool their resources against common experts and issues. *Id.* at 604.

Noting that the burden to establish essential need is extremely high, the *Surgitek* court held that the plaintiffs had not established essential need. *Id.* It stated, "The trial court's order in this case kept all of the remaining plaintiffs together in a single action, thereby allowing them to pool resources. Thus, if the need to pool resources were dispositive, the plaintiffs could have no complaint." *Id.* The court concluded that the plaintiffs had not established that it was "indispensably necessary" to try their claims in Bexar County. *Id.*

■ In this case, Ivic's and Slabic's affidavits were offered to establish essential need for Shrimps R Us's and Slabic's claims to be tried in Galveston County. In their response to STORM's motion to transfer venue, Shrimps R Us and Slabic relied on these affidavits to show (1) they "conduct their businesses in Galveston County;" (2) "[r]ecords related to their claim are located in Galveston County," including the oyster leases, which are recorded in Galveston County; (3) "[a]ll four Plaintiffs have jointly engaged counsel located in Galveston County and transferring this case to a different county would be cost prohibitive"; and (4) "[f]orcing some Plaintiffs to pursue claims outside of Galveston County would result in unnecessary duplication, increased costs of suit, and undue hardship on plaintiffs and their witnesses."

We agree with STORM that, under *Surgitek*, the reasons proffered in the affidavits do not show that it is indispensably necessary for Shrimps R Us's and Slabic's oyster-lease claims to be tried in Galveston County; that is, the reasons proffered in the affidavits do not establish an essential need for the oyster-lease claims to be brought in Galveston County. *See id.*; *see also Ramirez*, 123 S.W.3d at 52 (holding that use of common investigator, pooling of resources, presence of common facts and issues, and location of witnesses across the country did not establish essential need); *Smith v. Adair*, 96 S.W.3d 700, 707 (Tex. App.–Texarkana 2003, pet. denied) (holding that convenience, judicial economy, and sharing of costs do not establish essential need).

■ Shrimps R Us and Slabic, however, offer another basis to establish essential need. They assert that transferring all or part of their claims to Chambers County has the potential to result in inconsistent judgments. Shrimps R Us and Slabic assert that there is one central issue that is important to all claims being asserted: the validity of the Coastal Surface Lease. They point out that, as discussed above, Galveston County is the proper county for the Oystermen's declaratory-judgment claims regarding whether

STORM has the right, under the Coastal Surface Lease, to exclude licensed oyster fishermen from the public fishing areas. They indicate that a determination of this issue in Galveston County could be detrimental to their right to assert their oyster-lease claims, if those claims are transferred to Chambers County.

In response, STORM argues that any determination of the validity of the Coastal Surface Lease would not have a preclusive effect on the claims it seeks to have transferred to Chambers County; that is, it would not have a preclusive effect on Shrimps RUs's and Slabic's claims to enforce their rights to harvest oysters on the submerged land covered by their private oyster leases. STORM specifically points to Shrimps R Us's and Slabic's trespass-to-try-title claim, asserting that claim would not be affected because that claim does not require Shrimps R Us and Slabic to show that STORM does not have a valid lease.

█ "A trespass to try title action is the method of determining title to lands, tenements, or other real property" and is the exclusive method to adjudicate rival claims of title to real property. TEX. PROP. CODE ANN. § 22.001(a) (Vernon 2014); *Vernon v. Perrien*, 390 S.W.3d 47, 54 (Tex. App.–El Paso 2012, pet. denied). A trespass-to-try-title action is used to clear problems in chains of title to recover possession of land alleged to be unlawfully withheld from a rightful owner. *See Martin v. Amerman*, 133 S.W.3d 262, 265 (Tex. 2004).

█ STORM correctly points out that a plaintiff in a trespass-to-try-title action must recover on the strength of its own title and may not rely on the weakness of the defendant's title. *See Rogers v. Ricane Enters., Inc.*, 884 S.W.2d 763, 768 (Tex.1994); *Diversified, Inc. v. Hall*, 23 S.W.3d 403, 406 (Tex.App.–Houston [1st Dist.] 2000, pet. denied). A plaintiff may only prevail on a trespass-to-try-title claim "(1) by proving a regular chain of conveyances from the sovereign, (2) by proving a superior title out of a common source, (3) by proving title by limitations, or (4) by proving prior possession, and that the possession has not been abandoned." *Rogers*, 884 S.W.2d at 768. Here, the Oystermen will need to show that they received superior title from a common source: the State of Texas.

We disagree with STORM, however, that the declaratory-judgment claims do not have the potential to affect the trespass-to try-title claims. The Oystermen's declaratory-judgment claims necessarily entail a determination of the Coastal Surface Lease's validity, which itself necessarily entails a determination whether the Navigation District received the right to cultivate and harvest oysters on the submerged lands when the land was conveyed to it by the State of Texas in 1957 and 1967. If the State retained that right, then the Navigation District could not lease the submerged lands to STORM for the purpose of cultivating oysters. If the State did not retain that right, either in the patents or by law, and the right was conveyed to the Navigation District, then the district may have had the right to enter into the Coastal Surface Lease with STORM. Concomitantly, the Texas Parks and Wildlife Department, an agency of the State, may not have had the right to lease the submerged land under the private oyster leases in the 1970s and 1980s. Such a determination would undermine the Oystermen's trespass-for-title claims because they would be unable to show either the strength or the superiority of their titles from a common source.

To show the superiority of their titles, the Oystermen must establish that the State of Texas possessed the right to culti-

vate and harvest oysters on the submerged lands when the State issued the oyster leases to the private parties in the 1970s and 1980s; that is, they must show that the State retained these rights when it issued the land patents to the Navigation District in 1957 and 1967. Determining whether the State retained the right to cultivate oysters on the submerged land granted to the Navigation District is also essential to the determination of the validity of the Coastal Surface Lease in the declaratory-judgment action.

In short, the issue of the validity of STORM'S Coastal Surface Lease will necessarily be litigated and tried on the merits in Galveston County, which is not only a county of proper venue for all four Oystermen's declaratory-judgment claims under section 15.003 of the Civil Practice and Remedies Code but a county of mandatory venue under section 15.011. Thus, the Galveston trial court's determination of the declaratory-judgment action is ultimately determinative of an essential issue to be tried in all four Oystermen's suits for trespass to try title—whether, after it issued the land patents, the State retained and possessed the right to use the submerged land for purposes of oyster cultivating and harvesting.

 Under well-established Texas law, the doctrine of "[i]ssue preclusion, or collateral estoppel, prevents re-litigation of particular issues already resolved in a prior suit." *Barr v. Resolution Trust Corp ex rel. Sunbelt Fed. Sav.,* 837 S.W.2d 627, 628 (Tex.1992). A party seeking to benefit from collateral estoppel must establish that (1) facts sought to be litigated in second action were fully and fairly litigated in first action, (2) those facts were essential to judgment in first action, and (3) the

parties were cast as adversaries in first action. *Sysco Food Serv. Inc. v. Trapnell,* 890 S.W.2d 796, 801 (Tex.1994); *see also Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984) (holding that collateral estoppel bars relitigation of any ultimate issue of fact actually litigated and essential to the judgment in a prior suit, regardless of whether the second suit is based on same cause of action); RESTATEMENT (SECOND) OF JUDGMENTS § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."). "The doctrine of collateral estoppel ... is designed to promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation of issues." *Sysco Food Servs.,* 890 S.W.2d at 801.

Here, the validity of the Coastal Surface Lease, as determined by the Galveston County court, will determine the validity or invalidity of that lease with respect to all plaintiffs and will necessarily resolve whether, after issuance of the land patents, the State retained and possessed the right to cultivate and harvest oysters on the submerged land, an issue essential to determining the trespass-to-try-title claims. Any subsequent separate litigation as to these claims would not only be wasteful and duplicative but, most decisively, may be barred by collateral estoppel, prohibiting the re-litigation of issues that have been finally determined in litigation between the same parties.[2] *See Barr,* 837 S.W.2d at 628.

---

**2.** Likewise, if the claims were transferred to Chambers County, and that court ruled before the Galveston County court, the Chambers County judgment could have a preclusive effect on the declaratory-judgment claims pending in Galveston County.

■ Given the potential for inconsistent judgments if Shrimps R Us's and Slabic's claims were transferred to Chambers County, and the possible preclusive effect of the declaratory judgment as to the validity of STORM's Coastal Surface Lease on trying issues in Chambers County that were previously litigated by the same parties in Galveston County, we conclude that Shrimps R Us and Slabic have shown that it is indispensably necessary for them to litigate all of their claims in Galveston County. *See Surgitek,* 997 S.W.2d at 604. Thus, Shrimps R Us and Slabic have established an essential need to have their claims tried in Galveston County District Court where the suit is pending.[3] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(a)(3); *Surgitek,* 997 S.W.2d at 604; *see also National Union Fire Ins. Co. v. Valero Energy Corp.,* 143 S.W.3d 859 (Tex.App.–Corpus Christi 2004, pet. denied) (holding that plaintiff had shown essential need to have claims remain where suit was pending because, if claims were transferred, collateral estoppel would likely bar re-litigation).

We hold that the trial court did not err when it denied STORM's motion to transfer venue. We overrule STORM's two issues as discussed *supra.*

## Petition for Writ of Mandamus

■ STORM has also filed a petition for writ of mandamus, challenging the trial court's order denying its motion to transfer venue.

■ Mandamus is an extraordinary remedy that will issue only if (1) the trial court clearly abused its discretion and (2) the party requesting mandamus relief has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.,* 148 S.W.3d 124, 135–36 (Tex.2004). As discussed, STORM has the right to an interlocutory appeal of the order. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003(b). When the legislature has created the right to bring an interlocutory appeal, the remedy is adequate. *See In re Shkedy,* No. 14–12–00972–CV, 2012 WL 5337204, at *1 (Tex. App.–Houston [14th Dist.] Oct. 30, 2012) (mem.op.). "Interlocutory appeals lie as of right and must be decided on the merits; mandamus, on the other hand, is an extraordinary remedy, not issued as a matter of right, but at the discretion of the court." *Id.* (citing *Prudential,* 148 S.W.3d at 138).

Accordingly, STORM is not entitled to mandamus relief because it has an adequate remedy by appeal. *See id.* STORM's petition for writ of mandamus is denied.

## Conclusion

In the interlocutory appeal, we affirm the trial court's order denying STORM's motion to transfer venue.[4] In the original proceeding, we deny STORM's petition for writ of mandamus.[5]

---

3. We note that Shrimps R Us and Slabic could have brought their declaratory judgment action regarding the validity of the Coastal Surface Lease in Chambers County. We recognize, however, that when venue is proper in more than one county under general, mandatory, or permissive venue rules, the plaintiff is given the first choice of venue in the filing of the suit. *See GeoChem Tech Corp. v. Verseckes,* 962 S.W.3d 541, 544 (Tex.1998).

4. Appellate cause number 01–15–01026–CV.

5. Appellate cause number 01–16–00030–CV.