**Opinion filed October 31, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-24-00200-CV

_____

## LUFKIN US ACQUISITION COMPANY, LLC, Appellant

## V.

## APEX GROUP USA, INC; WES HALL; WESLEY ARMSTRONG; CONG ZHANG; AND KENNETH E., Appellees

**On Appeal from the 238th District Court**
**Midland County, Texas**
**Trial Court Cause No. CV60594**

## M E M O R A N D U M   O P I N I O N

This is an accelerated, interlocutory appeal of a venue determination involving multiple plaintiffs. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 15.003 (West 2017). Appellant, Lufkin US Acquisition Company, LLC, challenges the trial court's denial of its motion to transfer venue in a declaratory judgment action filed by Appellees, Apex Group USA, Inc, Wes Hall, Wesley Armstrong, Cong Zhang, and Kenneth E.

In a single issue, Lufkin argues that the trial court erred by denying its motion to transfer venue because Appellees failed to establish proper venue in Midland County.

Their positions summarized, Appellees rely upon Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, alleging that "a substantial part of the events . . . giving rise to the claim"—the *use* and sale of information that Lufkin avers is propriety to it—occurred in Midland County and an actual controversy on such use permits their declaratory judgment action. Lufkin counters that any action of Appellees accrued at the time that the contested information was *taken* from their offices in Angelina County. And it is not Section 15.002 that is controlling on the issue of venue, rather, it is Section 15.003(a) that requires each Plaintiff to have independently established Midland as their proper venue—but Appellees did not. We affirm.

*Factual and Procedural History*

The relevant facts of this appeal involve two suits between the same parties, the first by Lufkin, which was then nonsuited; and the second, a declaratory judgment action by Appellees, now before us.

Initially, Lufkin sent a letter to three former Apex employees, including Appellees Zhang and Armstrong, alleging that Armstrong potentially possessed and transferred Lufkin's confidential business information to Apex, before joining Apex as its chief operating officer. In the letter, Lufkin "expressly confirms that any further use or disclosure of Lufkin's non-public information by Apex or its employees is unauthorized and subject to Lufkin's pursuit of additional fines and penalties for knowing and intentional violations of state and federal law." In conjunction with their joint efforts that spanned over nine months, the parties entered into a remediation protocol whereby Appellee Hall, another former Lufkin employee

2

working for Apex, would provide his electronic devices for forensic analysis of confidential information and any such information would be removed and returned to Lufkin.

Apparently unsatisfied with the remediation protocol, Lufkin filed suit against Appellees in Midland County for misappropriation of trade secrets, including conversion, breaches of fiduciary duties, and other claims. All parties submitted themselves to the venue of Midland County and engaged in litigation there. Lufkin alleged that Armstrong and Hall surreptitiously accessed and obtained Lufkin's confidential trade secrets and provided them to Apex. Lufkin sought actual and exemplary damages from all Appellees, and other relief under the Texas Uniform Trade Secrets Act. On their face, Lufkin's claims were not limited to Apex's use of the alleged trade secrets but sought to restrict Hall and Armstrong from possession or use in any context. In a deposition, Lufkin's corporate representative affirmatively stated that Lufkin was seeking "[e]very dollar of profit that [Apex] has earned selling products that Lufkin sells." After approximately eighteen months of litigation, Lufkin nonsuited its case without prejudice.

On March 6, 2024, *one day after Lufkin filed its nonsuit*, Appellees, having all been named defendants in Lufkin's former suit filed in Midland County, filed a petition seeking a declaratory judgment that the information they possessed and used was not confidential and did not belong to Lufkin. Appellees pleaded that Apex's "principal business" was in Midland, Texas,[1] and alleged that "[v]enue is proper in Midland County, Texas pursuant to Section 15.002(a)(1) of the Texas Civil Practice and Remedies Code, as Midland County is the county in which all or a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred." Appellees'

---

[1]Appellee Apex affirmed its position at the hearing on the motion to transfer, that their principal place of business in Texas is in Midland.

petition set out that the central issue of both suits had been, and continued to be, whether the Lufkin information was confidential and proprietary and whether Appellees had the right to use that information.

Lufkin filed a motion to transfer venue to Angelina County, primarily under Section 15.003 of the Civil Practice and Remedies Code, asserting that Appellees cannot each individually establish venue in Midland County since none of them resided in Midland County, nor was Apex's principal place of business there.[2] Lufkin argued that Lufkin's principal place of business was in Angelina County, and that Appellees obtained the confidential trade secrets at issue in Angelina County. Lufkin postulated that Appellees' cause of action initially accrued, at the latest, when Lufkin sent Appellees a letter alleging that Appellees possessed and "misuse[d]" Lufkin's confidential information. Based on the accrual date, Lufkin posited that "a substantial part" of the events that gave rise to Appellees' declaratory judgment action occurred only in Angelina County when its former employees first accessed and transferred the data to Apex.[3]

Appellees responded to Lufkin's motion, arguing that a substantial part of the events that gave rise to their suit was the purported *use* of Lufkin's alleged trade secrets, which occurred in Midland County. It is apparent that Lufkin's past claim and continued threat to recover all of Appellees' profits—primarily derived from conducting business in Midland County—was a catalyst in both suits. Appellees' response to the motion to transfer venue included a table describing multiple

---

[2]Internet postings and business filings relied upon by Lufkin are not probative on the issue of principal office or place of business. *See Ford Motor Co. v. Johnson*, 473 S.W.3d 925, 930 (Tex. App.—Dallas 2015, pet. denied).

[3]Lufkin also sought permissive transfer, arguing that Midland County was an inconvenient forum. Other than as applied to the elements of Sections 15.003(a)(2) and (4), we do not address forum convenience with regard to the trial court's implied denial of a permissive transfer because it is not a ground for appeal. CIV. PRAC. & REM. § 15.002(c).

business transactions marketing the alleged trade secret information in Midland County during the relevant time frame and they posited that Lufkin's attempt to disgorge them of all profits earned from sales made their use of the information relevant to determining venue. Appellees included two affidavits and several exhibits in support of its arguments.

At the hearing on the motion to transfer, Lufkin emphasized that Appellees suit as filed did not seek a declaration on whether they "used" Lufkin's proprietary information; rather, Appellees only sought a declaration as to whether the information was confidential and belonged to Lufkin. According to Lufkin, because Appellees took possession of its confidential information at its principal place of business in Angelina County, that was the proper venue. Lufkin further argued that its prior lawsuit against Appellees was "not a part of the venue analysis."

When questioned by the trial court about Lufkin's argument that Appellees' declaratory judgment action did not expressly include "use," Appellees responded that use is "part of the confidential analysis and it would also go to whether or not it is confidential, is it being used[,] and how it was being used."[4] Appellees recited multiple places where their petition raised the issue of use.

Appellees likened Lufkin's nonsuit without prejudice to the "sword of Damocles," hanging over their heads and threatening the refiling of suit to deprive Appellees of all profits at any given time. Thus, Appellees claimed to have brought the declaratory judgment action to determine the rights of the parties rather than wait for Lufkin to refile suit.

---

[4]In the original verified petition filed in Midland County that was subsequently nonsuited by Lufkin, it alleged that Apex, and its directors with the help of former employees—including all Appellees—devised a plan "to steal and use Lufkin's confidential and trade secret information" and that unless stopped, "Defendants will continue to irreparably harm Lufkin by possessing and using the information." Lufkin asked the trial court to "put a stop to the misuse of Lufkin's information."

The trial court denied Lufkin's motion and this accelerated interlocutory appeal ensued. *See* CIV. PRAC. & REM. § 15.003 (c), (d).

*Applicable Law & Standard of Review*

We review the trial court's order denying a motion to transfer venue de novo. *Id.* § 15.003(c)(1); *Surgitek, Bristol-Myers Corp. v. Abel*, 997 S.W.2d 598, 603 (Tex. 1999). Venue selection presupposes that the parties to a lawsuit have choices and preferences about where their case will be litigated. *Wilson v. Tex. Parks & Wildlife Dep't*, 886 S.W.2d 259, 260 (Tex. 1994). "Venue may be proper in many counties under general, mandatory, or permissive venue rules." *Id.* Generally, plaintiffs are allowed to choose venue first, and the plaintiff's choice cannot be disturbed as long as suit is initially filed in a county of proper venue. *Id.*; *Union Pac. R.R. Co. v. Stouffer*, 420 S.W.3d 233, 239 (Tex. App.—Dallas 2013, pet. dism'd). Once the defendant specifically challenges the plaintiff's choice of venue, the plaintiff has the burden to present prima facie proof that venue is proper in the county of suit. *Stouffer*, 420 S.W.3d at 239. A plaintiff satisfies this burden "when the venue facts are properly pleaded and an affidavit, and any duly proved attachments to the affidavit, are filed fully and specifically setting forth the facts supporting such pleading." TEX. R. CIV. P. 87(3)(a). This prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *Ruiz v. Conoco, Inc.*, 868 S.W.2d 752, 757 (Tex. 1993). But, if the plaintiff fails to discharge its burden, the right to choose a proper venue passes to the defendant, who must then prove that venue is proper in the defendant's chosen county. *See* CIV. PRAC. & REM. § 15.063(1); *In re Mo. Pac. R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999).

Under the general venue rule, all suits must be brought:

(1) in the county in which all or a substantial part of the events or omissions giving rise to the claim occurred;

6

(2) in the county of [the] defendant's residence at the time the cause of action accrued if [the] defendant is a natural person;

(3) in the county of the defendant's principal office in this state, if the defendant is not a natural person; or

(4) if Subdivisions (1), (2), and (3) do not apply, in the county in which the plaintiff resided at the time of the accrual of the cause of action.

CIV. PRAC. & REM. § 15.002(a). Reviewing courts do not choose *the best venue* when reviewing venue challenges; rather, we determine whether the venue facts satisfy the substantiality threshold under Section 15.002(a)(1). *Chiriboga v. State Farm Mut. Auto. Ins. Co.*, 96 S.W.3d 673, 681 (Tex. App.—Austin 2003, no pet.). "If there is any probative evidence in the record indicating that venue was proper in the county where judgment was rendered, we must uphold the trial court's determination, even if the preponderance of the evidence is to the contrary." *Bergin v. Tex. Beef Grp.*, 339 S.W.3d 312, 315 (Tex. App.—Amarillo 2011, no pet.) (citing *Ruiz*, 868 S.W.2d at 758); *see also* CIV. PRAC. & REM. § 15.064(b). In assessing venue under Section 15.002(a), we analyze the whole record to determine whether the plaintiffs have put forth prima facie evidence showing that the acts or omissions at issue are materially connected to the plaintiffs' causes of action. *See Moveforfree.com, Inc. v. David Hetrick, Inc.*, 288 S.W.3d 539, 542 (Tex. App.— Houston [14th Dist.] 2009, no pet.); *Chiriboga*, 96 S.W.3d at 680–81; *see also* CIV. PRAC. & REM. §§ 15.064(b), 15.002(a)(1).

In suits with multiple plaintiffs, each plaintiff must establish proper venue in the county where the suit is filed, independent of every other plaintiff. CIV. PRAC. & REM. § 15.003(a). Venue is determined based on the facts existing at the time the cause of action that is the basis of the suit accrued. *Id.* § 15.006. "Generally, a cause of action accrues when facts come into existence that authorize a claimant

to seek a judicial remedy, when a wrongful act causes some legal injury, or whenever one person may sue another." *Ammerman v. Ranches of Clear Creek Cmty. Ass'n, Inc.*, 562 S.W.3d 622, 636 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (quoting *Am. Star Energy & Min. Corp. v. Stowers*, 457 S.W.3d 427, 430 (Tex. 2015)).

Importantly, a trial court has discretion to allow a broader range of evidence under Section 15.003(a) than it would otherwise consider in a traditional venue hearing. *Abel*, 997 S.W.2d at 603. When reviewing a venue determination under Section 15.003(a), we conduct a de novo review. *Id.* at 604 (citing CIV. PRAC. & REM. § 15.003(c)(1)). "Actions for declaratory judgments are governed by general venue rules for civil actions." *In re Cont'l Airlines, Inc.*, 988 S.W.2d 733, 735 (Tex. 1998). "A cause of action under the Declaratory Judgment Act accrues when there is an *actual controversy* between the parties." *Ammerman*, 562 S.W.3d at 636–37 (citing *In re Estate of Denman*, 362 S.W.3d 134, 144 (Tex. App.—San Antonio 2011, no pet.)).

At common law, a party could recover for misappropriation of trade secrets if it established "(1) the trade secret existed; (2) the trade secret was acquired through breach of a confidential relationship or was discovered by improper means; (3) the defendant used the trade secret without authorization; and (4) that [the party] suffered damages as a result." *Twister B.V. v. Newton Rsch. Partners, LP*, 364 S.W.3d 428, 437 (Tex. App.—Dallas 2012, no pet.). However, in 2013, the Texas legislature passed the Texas Uniform Trade Secrets Act (TUTSA), which "displace[d] conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret." CIV. PRAC. & REM. § 134A.007(a) (West 2019). Thus, TUTSA expanded the elements of a misappropriation to *include* use, if any, but no longer specifically *requiring* use of the trade secrets. *See id.* § 134A.002(3) (defining "misappropriation" to include "acquisition of a trade secret

8

of another by a person who knows or has reason to know that the trade secret was acquired by improper means" *or* "disclosure or use of a trade secret of another without express or implied consent"); *Title Source, Inc. v. HouseCanary, Inc.*, 612 S.W.3d 517, 532–34 (Tex. App.—San Antonio 2020, pet. denied).

*Analysis*

A. *Appellate Jurisdiction*

Generally, we do not have jurisdiction to review a trial court's venue determination. *See* CIV. PRAC. & REM. § 15.064(a). In this case, the parties assert that we have jurisdiction pursuant to Section 15.003 (a) and (b), based on the trial court's determination that all Appellees established Midland County as a proper venue. An interlocutory appeal may be taken from a trial court's determination that (1) a plaintiff did or did not independently establish proper venue; or (2) a plaintiff that did not independently establish proper venue did or did not establish the conditions prescribed by Subsections (a)(1)–(4). *Id.* § 15.003(a), (b). We agree with the parties that we have jurisdiction over this interlocutory appeal pursuant to Section 15.003(b).

B. *Accrual of Appellees' Cause of Action*

Lufkin's arguments on appeal mirror its arguments before the trial court: "[t]he facts giving rise to that declaratory judgment . . . occurred in Angelina County, where Lufkin develops and maintains the information and where Appellee Armstrong worked for Lufkin and received the information." Lufkin continues, "[Appellees'] declaratory-judgment claim about the nature and ownership of information accrued . . . when the parties had a concrete disagreement about Appellees Armstrong's and Hall's possession of Lufkin's information, in November 2021 at the latest. Any events after that have no bearing on venue."

9

We disagree with Lufkin. Nothing in the record supports Lufkin's argument that the alleged use occurred only *after* Lufkin first notified Appellees of a potential controversy. *See* CIV. PRAC. & REM. § 134A.002(3) (establishing "misappropriation" to include both transfer and use of information). Moreover, assuming arguendo that no "use" of the information occurred until after Lufkin sent its initial letter to Appellees, the record indicates that Appellees were notified that Lufkin affirmatively sought Apex's profits as damages when Lufkin filed suit.[5] *See Ammerman*, 562 S.W.3d at 636–37 (establishing that in declaratory actions, a cause of action accrues when there is an actual controversy between the parties). In the context of misappropriation of trade secrets, we cannot fathom how Lufkin would suffer "actual . . . damages" as it claimed in its petition and also be entitled to "[d]isgorgement of . . . profits" as originally prayed for absent Apex's "use" of its alleged confidential trade secrets.

Finally, it is apparent from the context of Appellees' petition that the information about which Appellees' seek a declaratory judgment is the very information that Lufkin alleged in its previous lawsuit. In that regard, Appellees presented evidence in support of their entitlement to a declaratory judgment, that use of the information by them in Midland County was "a substantial part of the events . . . giving rise to the claim," making it a permissible venue exception. *See* CIV. PRAC. & REM. § 15.002(a)(1). While alleged in Lufkin's suit, the disgorgement of profits from the use of their claimed trade secrets was a substantial part of its claim. In Appellees' declaratory judgment suit, use of the information that allegedly occurred in Midland County is "a substantial part of the events . . . giving rise" to

---

[5]Lufkin's corporate representative was deposed. Rule 88 of the Texas Rules of Civil Procedure specifies that depositions taken "may be read in evidence in any subsequent suit between the same parties concerning the same subject matter in like manner as if taken in such subsequent suit." TEX. R. CIV. P. 88. Likewise, the trial court may consider "other discovery products containing information relevant to a determination of proper venue." *Id.*

their claim. *See id.* Appellees' suit is borne directly from the subject of the actual controversy in Lufkin's original suit—a case that was nonsuited, but which could be pursued again.

C. *The Appellate Court Shall Consider the Entire Record*

After Apex introduced evidence from Lufkin's initial suit at the transfer hearing, Lufkin asserted that the initial case "is irrelevant. It's nonsuited. . . . It's gone." Lufkin argued that the evidence and record from that suit could not be used to establish venue under Section 15.002. We disagree. Rule 88 of the Texas Rules of Civil Procedure states differently with regard to the use of discovery "in any subsequent suit between the same parties concerning the same subject matter." TEX. R. CIV. P. 88. Moreover, Lufkin attached to their motion to transfer and Appellees attached to their motion to transfer response (CR98-127) multiple exhibits (incorporated by reference and supported by affidavits). These exhibits include deposition testimony and pleadings from Lufkin's initial suit. The record contains no written or oral motion to exclude nor objections to inclusion or use of any exhibits on which a ruling from the trial court was requested or obtained. At the hearing or prior thereto, the failure to obtain written rulings on objections to evidence waives the issue, unless the record contains an implicit ruling by the trial court. *See* TEX. R. APP. P. 33.1(a)(2)(A) (trial court must either expressly or implicitly rule on an objection to preserve the issue for appellate review); *see also Kearns v. Heller*, No. 08-23-00300-CV, 2024 WL 3049471, at *8 (Tex. App.—El Paso June 18, 2024, no pet. h.) (objection and ruling on evidence are required in a hearing on a motion to transfer venue). For an "implicit" ruling to exist, there must be something in the record reflecting that the trial court ruled on the objections. *See Torres v. GSC Enter., Inc.*, 242 S.W.3d 553, 560 (Tex. App.—El Paso 2007, no pet.); *Strunk v. Belt Line Rd. Realty Co.*, 225 S.W.3d 91, 99 (Tex. App.—El Paso 2005, no pet.).

11

Accordingly, these exhibits were properly before the trial court, and we too must give them due consideration. *See* CIV. PRAC. & REM. § 15.064 ("In determining whether venue was or was not proper, the appellate court shall consider the entire record.").

As we have stated, we assess the entire record when reviewing the trial court's venue determination. *See* CIV. PRAC. & REM. § 15.064(b). The prima facie evidence need not come from a party's own affidavit or other offered proof—nothing in the venue statutes precludes a party from citing to or relying upon record evidence of another party. *See id.*; *see also Kearns*, 2024 WL 3049471, at *8. As part of the record before us, Lufkin attached portions of the depositions of the four Appellee individuals. These depositions include evidence that Apex is a small company conducting all of its business tasks through only nine employees, including individual Appellees: Wesley Armstrong–originally CEO but now engineering director; Wes Hall—executive vice president of sales and marketing of all product lines; Cong Zhang—president of Apex; and Kenneth E.—the acting CEO. These are all management roles.

In their response to Lufkin's motion to transfer, Appellees charted having talked in Midland County with eighty-one persons of other companies, resulting in twenty-four sales calls from which nineteen sales were made—having engaged in more business activity in Midland County than in any other location. Approximately 73% of Apex's total revenue was derived from sales made to companies in Midland County. As alleged in their response to the motion to transfer venue "[Appellees] have engaged in more activity (making sales calls, making sales, shipping products) in Midland than anywhere else." Accordingly, a substantial part of the use of the alleged trade secrets by the individual Appellees, and through their efforts, by Apex,

12

was in Midland County when Appellees' cause of action accrued.[6] The Appellees' prima facie proof is not subject to rebuttal, cross-examination, impeachment, or disproof. *See Ruiz,* 868 S.W.2d at 757; *Chiriboga*, 96 S.W.3d at 678.

D.    *Declaratory Judgment—the Element of An Actual Controversy*

A declaratory judgment action does not provide a court with the power to rule upon contingent matters, "or to determine questions not then essential to the decision of an actual controversy, although such questions may in the future require adjudication." *Tex. Health Care Info. Council v. Seton Health Plan, Inc.*, 94 S.W.3d 841, 846 (Tex. App.—Austin 2002, pet. denied). The Texas Supreme Court has acknowledged that declaratory judgment suits "are often brought with an eye to future harm." *Sw. Elec. Power Co. v. Lynch*, 595 S.W.3d 678, 685 (Tex. 2020). The court went on to say that "[a] plaintiff may very well present a court with a justiciable controversy when the plaintiff asserts that a live controversy exists and harm will occur if the controversy is left unresolved." *Id.* (citing *Etan Indus., Inc. v. Lehmann*, 359 S.W.3d 620, 624 (Tex. 2011)). A controversy is justiciable only "if there exists a real and substantial controversy" involving a matter currently in dispute. *See Tex. Health Care Info. Council*, 94 S.W.3d at 846.

Here, the issue is when the actual controversy for a declaratory judgment cause of action accrued. *See* CIV. PRAC. & REM. § 15.006. Lufkin argues that Apex's cause of action accrued when it sent Appellees its initial demand letter. Lufkin asserts that at that time, all relevant facts occurred in Angelina County, such as the individual Appellees copying its data and transferring it to Apex. According to

---

[6]In a company of nine people, the four individual Appellees constitute Apex's entire management group. They were previously sued by Lufkin for corporate and individual liability. Thus, Appellees argued the obvious: "As to each plaintiff [now Appellees] that is mentioned, I think it's clear that Apex USA, acting through its individual plaintiffs, that's the allegations here, the actual plaintiffs and who they're acting [for]. . . . [T]he corporation can only act through their individual plaintiffs. These were the people that were sued." We reason that Apex USA cannot itself take or use trade secret information; it is only through its four management individuals, now Appellees, that it might do so.

Lufkin, no relevant facts existed in Midland County at that time. Thus, Lufkin argues, Midland County cannot be the county in which "a substantial part of the events . . . giving rise to the claim occurred." *See* CIV. PRAC. & REM. § 15.002(a)(1). However, a declaratory judgment is not ripe until litigation "seems unavoidable." Had Appellees filed a declaratory judgment action when they acquired the alleged trade secrets, there would not have yet been an actual controversy, only a contingent threat of future litigation. *See Trinity Settlement Servs., LLC v. Tex. State Secs. Bd.*, 417 S.W.3d 494, 506 (Tex. App.—Austin 2013, pet. denied) (merely reserving a right to future litigation falls short of the requirement of "threatened litigation in the immediate future which seems unavoidable") (quoting *Tex. Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153–54 (Tex. App.—Austin 1998, no pet.)); *see also Save our Springs All. v. City of Austin*, 149 S.W.3d 674, 683 (Tex. App.—Austin 2004, no pet.). The controversy was likewise contingent while the parties cooperated in the pre-suit return and expungement of Lufkin's alleged trade secret information from Apex's databases. *See Trinity Settlement Servs.*, 417 S.W.3d at 506.

In contrast, Appellees argue that any threat of litigation by Lufkin, oral or written, was not a ripe controversy but contingent on their noncooperation with Lufkin's demand letter. Rather, Appellees contend, it is when Lufkin filed suit in Midland County seeking actual damages and disgorgement of profits from the use of its trade secrets, combined with the testimony of Lufkin's corporate representative claiming a right to all profits of Apex, that there was an actual controversy upon which a declaratory judgment action could be filed. Appellees attached the affidavit of attorney T. Blake Edwards in support of their accrual theory. We agree with Appellees.

In *Texas Health Care Information Council v. Seton Health Plan, Inc.*, the State sent a letter threatening Seton with statutory penalties of "no less than the amount of

14

$153,000" for failing to file certain annual reports, even though the controlling statute in question only provided a civil penalty of no more than $10,000 for "each act of violation." 94 S.W.3d 841, 844 (Tex. App—Austin 2002, pet. denied) (quoting TEX. HEALTH & SAFETY CODE ANN. § 108.014(b) (West 2017). The State withdrew its letter after Seton filed a declaratory judgment action and conceded in its counterclaim that $10,000 per report was the maximum civil penalty that it sought for the violations at issue. *Id.* at 844–45. The State, however, refused to concede that it misinterpreted the statute or that the maximum statutory penalty it could assess in the future was $10,000 per report. *Id.* While the Third Court of Appeals specifically considered mootness, the argument was that the declaratory judgment action was not warranted because there was then no actual or justiciable controversy. *Id.* at 847. The court held that the State's voluntary abandonment of its efforts to collect the $153,000 penalties, without other action, provided no assurance that the State would not adopt its earlier statutory interpretation in future disputes with Seton. *Id.* at 849.

Here, it is the nonsuit without prejudice and the constant legal jeopardy, formerly realized but not gone,[7] that creates the actual controversy that is required for a declaratory judgment action to be filed. *See Matthews v. Kountze Indep. Sch. Dist.*, 484 S.W.3d 416, 419–20 (Tex. 2016) (citing *Tex. Health Care Info. Council*, 94 S.W.3d at 844). Accordingly, at the time of accrual, Appellees' use of Lufkin's information and the profits therefrom were events that gave rise to Appellees' cause of action—a substantial part thereof arising in Midland County. *See* CIV. PRAC. & REM. § 15.002(a)(1); *see also Nalle Plastics Fam. Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 198 (Tex. App.—Corpus Christi–

---

[7]Lufkin also attached to its motion to transfer, under affidavit, correspondence between the parties' attorneys explaining that the reason that Appellees filed the declaratory judgment action was because Lufkin had taken a nonsuit but "without prejudice,' thus explicitly maintaining its right to re-file."

Edinburg 2013, pet. denied) (holding affidavit testimony that "some" work was performed in Nueces County and that invoices were issued from a Nueces County office, inter alia, constituted probative evidence supporting venue in Nueces County).

Thus, although Lufkin's original petition against Appellees, now nonsuited, does not fix venue in Midland County, it does provide *context* for Appellees' declaratory action in terms of an actual controversy that we cannot ignore. *See Abel*, 997 S.W.2d at 603 (The court of appeals is not constrained to review only the pleadings and affidavits, "but should consider the entire record, including any evidence presented at the hearing."). Appellees argue that they seek to remove the specter of future litigation which hangs over their heads, threatening to take that which they have rightfully earned. Appellees point out that litigation and discovery between the same parties regarding the same facts and issues proceeded for eighteen months before Lufkin's nonsuit was filed. Lufkin alleged that each Appellee misappropriated Lufkin's information, an actual controversy with a lingering threat, and each Appellee similarly now seeks to have a judicial declaration of ownership and the ability to use the alleged trade secrets. As set forth by Appellees in their response to the motion to transfer, not only have the marketing efforts by them in Midland County been the most lucrative, but the quantity of effort has been substantial: "[Appellees] have engaged in more activity (making sales calls, making sales, shipping products) in Midland than anywhere else." *See Nalle Plastics Fam.*, 406 S.W.3d at 198.

A court should look to "the heart of the controversy," and to "the controlling issue." *See Renwar Oil Corp. v. Lancaster*, 276 S.W.2d 774, 776 (Tex. 1955). In *Beard v. Endeavor Natural Gas, L.P.*, the court determined the "heart of the dispute" and then assessed whether a substantial part of the facts giving rise to it occurred in

16

the selected forum. No. 01-08-00180-CV, 2008 WL 5392026, at \*3–4 (Tex. App.—Houston [1st Dist.] Dec. 19, 2008, pet. denied) (mem. op.). Here, the "heart" of Appellees' suit is the actual controversy created by the alleged possession and use of confidential information predominately in Midland County, and the continuing threat of disgorgement of profits based on the proprietary claims of Lufkin. *See id.* There is evidence that a substantial part of the events giving rise to the claim of Appellees occurred in Midland County. *See* Civ. Prac. & Rem. § 15.002(a). Accordingly, because there is some probative evidence in the record indicating that venue was proper in the county where suit was brought, we uphold the trial court's determination, even if it may be argued that the preponderance of the evidence is to the contrary. *See id.* § 15.064(b); *Bergin*, 339 S.W.3d at 315 (citing *Ruiz*, 868 S.W.2d at 758).

E.    *Meeting the Elements of Section 15.003(a)(1)–(4)*

If venue is proper under Section 15.002 as pleaded by Appellees, we need not decide whether the individual Appellees established venue in Midland County otherwise, vis-à-vis Section 15.003(a)(1–4). *See* Civ. Prac. & Rem. § 15.003 (noting that plaintiffs may establish venue under Section 15.003(a)(1)–(4)—*if they have not otherwise independently established it under another venue provision*). However, here and at the hearing on its motion to transfer venue, Lufkin argues that the individual Appellees do not establish venue in Midland County under Section 15.002 and failing that, they did not individually provide prima facia evidence of the four requisites of Section 15.003 (a)(1)–(4). *See* Civ. Prac. & Rem. § 15.003(a)(1)–(4).

In suits with multiple plaintiffs, each plaintiff must establish proper venue in the county where the suit is filed, independent of every other plaintiff. *Id.* § 15.003(a). Failing that, the suit may still proceed if instead a plaintiff establishes:

17

(1) joinder of that plaintiff or intervention in the suit by that plaintiff is proper under the Texas Rules of Civil Procedure;

(2) maintaining venue as to that plaintiff in the county of suit does not unfairly prejudice another party to the suit;

(3) there is an essential need to have that plaintiff's claim tried in the county in which the suit is pending; and

(4) the county in which the suit is pending is a fair and convenient venue for that plaintiff and all persons against whom the suit is brought.

*Id.* § 15.003(a).

The standard of review is modified under Section 15.003. We determine whether the trial court's order is proper based on an independent determination from the record and not under either an abuse of discretion or substantial evidence standard. *Id.* § 15.003(c)(1). In our interlocutory appellate review of the entire record, our venue determination is de novo. *Id.* § 15.064(b); *Abel*, 997 S.W.2d at 603; *Sustainable Tex. Oyster Res. Mgmt. L.L.C. v. Hannah Reef, Inc.*, 491 S.W.3d 96, 105–07 (Tex. App.—Houston [1st Dist.] 2016, pet. denied).

Even assuming that Appellees failed to provide prima facia evidence in support of venue under Section 15.002, on its face, the requirements of Section 15.003(a)(1), (2) and (4) have been established. We observe that there is nothing improper under the Texas Rules of Civil Procedure or its restrictions that prevent Appellees, as alleged actors, from being parties to the declaratory judgment suit.[8] *See* CIV. PRAC. & REM. § 15.003(a)(1). Having maintained a similar suit

---

[8]In any event, by its terms Section 15.003(a)(1) appears on its face to be limited to joinder or intervention of plaintiffs. The language of Section 15.003(a) that includes "because the lawsuit was begun by more than one plaintiff, or otherwise" is missing from Section 15.003(a)(1). *See* CIV. PRAC. & REM. § 15.003. Here, the individual Appellees were not joined into an already existing lawsuit, nor did they intervene.

involving the same parties and choosing Midland County as the venue in which to maintain litigation there for at least eighteen months, Lufkin cannot be unfairly prejudiced by that venue now. *See id.* § 15.003(a)(2). Similarly, Lufkin cannot now contend that Midland County is not a fair and convenient venue. *See id.* § 15.003(a)(4). At the hearing on its motion to transfer, Lufkin either conceded proof, or had no argument contesting any absence of proof, in support of Section 15.003(a)(1), (2), or (4). *See id.* § 15.003(a). Thus, we are left to review the record to determine if there was prima facie proof under Section 15.003(a)(3)—that "there is an essential need to have [the individual Appellees] claim tried in the county in which the suit is pending." *Id* § 15.003(a)(3).

Considering a broader range of evidence, and on appeal looking at the whole record for evidence in support of the trial court's decision, the evidence shows that the individual Appellees constitute the management of Apex. *See id.* § 15.064(b); *Abel*, 997 S.W.2d at 603; *Sustainable Tex. Oyster Res. Mgmt.*, 491 S.W.3d at 105–07. They are not included merely because of Appellees' efforts to forum shop.[9] They were sued previously by Lufkin and an actual controversy exists as to their authority to use the contested information and collect profits. As we have already discussed, it is only through their management that Apex may act. Appellees' acts and omissions and the question of trade secret ownership are inextricably intertwined. To place venue for the individual Appellees in a different county from that established by Apex risks inconsistent rulings and conflicting judgments from different courts and factfinders as to the ownership, use, or misuse, by one or all Appellees and the consequential right of Lufkin to later seek disgorgement of profits or monies tied thereto. *See Sustainable Tex. Oyster Res. Mgmt.*, 491 S.W.3d at 112

---

[9]A purpose in using the term "substantial part" in the statute was to curtail forum-shopping. *Chiriboga*, 96 S.W.3d at 681.

(holding that the potential for inconsistent judgments was sufficient to establish an "essential need" supporting venue); *Tex. Mut. Ins. Co. v. E. Side Surgery Ctr., Inc.*, 159 S.W.3d 155, 159–60, 161–62 (Tex. App.—Corpus Christi–Edinburg 2004, pet. dism'd).

We distinguish this case from a decision from one of our sister courts in *Devon Energy Corp. v. Iona Energy, L.P.*, No. 02-19-00343-CV, 2020 WL 98138, at *1 (Tex. App.—Fort Worth Jan. 9, 2020, pet. denied) (mem. op.). In *Devon Energy*, the Second Court of Appeals concluded that the inconsistent-judgments argument was not sufficient to meet the "high burden to establish the essential need" to have the claims litigated in the same venue. *See id.* at *8. However, that litigation did not include the same parties in two related suits, nor did it involve the risk of overlapping or contrary findings of trade secret ownership and issues of consequent liability for the *same* acts or omissions (by its individual managers affecting liability of corporate principal Apex, and vice versa). *See id.* at *7 (noting that even if the plaintiffs' claims were all adjudicated in the same suit, different results could occur based on separate leases and transfer orders). Here, however, the facts and claims all relate to the same Appellees and would not result in different outcomes when joined in the same suit—individual Appellees' liability would necessarily create Apex's liability, if any.[10] Importantly, contrary determinations on the threshold issue of whether the information used was proprietary to Lufkin would be avoided by all Appellees being joined in a single suit and venue. Accordingly, there is an essential need to have all individual Appellees joined in the suit where Apex's

---

[10]To further illustrate, Apex, Zhang, and Kenneth E. could not be liable under TUTSA absent Hall or Armstrong taking and disclosing the information and Apex, Zhang, or Kenneth E.'s receiving or using the information. *See* CIV. PRAC. & REM. § 134A.002(3). Similarly, Hall or Armstrong could not be liable absent Apex, Zhang, or Kenneth E.'s receipt or use of the information. *See id.*

declaratory judgment suit is pending. *See* CIV. PRAC. & REM. § 15.003(a)(3); *Sustainable Tex. Oyster Res. Mgmt.*, 491 S.W.3d at 112.

Appellees have alleged and shown by prima facie evidence that their joint "use" of the information in forwarding the business and profits of Apex, primarily in Midland County, constitutes "a substantial part of the events . . . giving rise to the claim[s]." *See* CIV. PRAC. & REM. § 15.002(a)(1). We conclude that the record contains probative evidence that all or a substantial part of the events giving rise to each of Appellees' claims of entitlement to a declaratory judgment occurred in Midland County under Section 15.002(a)(1). Alternatively, the record also contains prima facia evidence fulfilling the requirements of Section 15.003(a)(1)–(4). *See id.* §§ 15.002, 15.003. Lufkin's sole issue is overruled.

*This Court's Ruling*

We affirm the trial court's order denying Lufkin's motion to transfer venue.


W. BRUCE WILLIAMS
JUSTICE


October 31, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.